The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On 6 April 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. On 6 April 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant.
4. A set of employment records, including plaintiff's Medical Leave Requests, marked as Stipulated Exhibit Number Two, is admitted into evidence.
5. A set of short term disability records, marked as Stipulated Exhibit Number Three, is admitted into evidence.
6. A set of plaintiff's medical records, received by the Industrial Commission on 7 November 1996 is admitted into evidence.
EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Gwinn, Dr. Derian, Dr. Rich and Dr. Schmickley are OVERRULED.
************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-eight years old and she had completed the twelfth grade of high school. Plaintiff began working for defendant as a packer in 1988. Defendant manufactured snack foods, including Austin crackers.
2. While performing her usual duties for defendant on 6 April 1992, plaintiff injured her back while lifting a box from a pallet. Prior to her injury, plaintiff had an asymptomatic degenerative disc at L5-S1. The incident on 6 April 1992, aggravated plaintiff's pre-existing degenerative disc and caused plaintiff to experience low back pain with occasional radiation into her legs consistent with an S1 distribution.
3. In addition to her low back and leg pain, plaintiff experienced pain in her arms, hands, neck and head. The evidence of record is insufficient to prove by its greater weight that the pain in plaintiff's arms, hands, neck or head was caused or aggravated by the incident on 6 April 1992.
4. Following her injury, plaintiff first sought medical treatment at Doctor's Urgent Care. On 13 May 1992, plaintiff presented to Dr. Gwinn with low back pain, buttocks pain and occasional leg pain. These pains were due to a disc protrusion at L5-S1 which was caused by the aggravation of plaintiff's pre-existing degenerative disc.
5. Dr. Gwinn continued to treat plaintiff and on 26 May 1992, he restricted plaintiff from lifting greater than ten pounds, bending, twisting and prolonged sitting. On 15 June 1992, Dr. Gwinn increased plaintiff's lifting restriction to fifteen pounds and advised plaintiff to avoid excessive forward bending and twisting. He then released her to return to work for two hours per day beginning 22 June 1992. Plaintiff did not return to work as allowed by Dr. Gwinn.
6. On 14 August 1992, Dr. Gwinn released plaintiff to return to light duty work for four hours per day through 31 August 1992. He anticipated allowing her to return to work for eight hours per day beginning 1 September 1992. At this time, plaintiff's lifting restriction was twenty-five pounds.
7. On 11 September 1992 Dr. Gwinn continued plaintiff's light duty restrictions. Due to her continued complaints of severe pains coupled with the absence of objective findings, Dr. Gwinn referred plaintiff to David Wiley, M.S. for administration of an MMPI-2. Mr. Wiley administered the MMPI-2 on or about 18 September 1992. At that time, plaintiff exhibited symptoms of hysteria, depression and hypochondriasis. Another MMPI-2 was administered to plaintiff by Dr. Schmickley on 23 June 1993. On that date, plaintiff had a somatoform pain disorder and dependent personality disorder. These conditions pre-existed and were not aggravated by plaintiff's injury on 6 April 1992. These conditions caused plaintiff to magnify her physical symptoms.
8. On 25 September 1992, Dr. Gwinn continued plaintiff's light duty restrictions through 5 October 1992, when he allowed plaintiff to resume working eight hours per day, with no bending, twisting or lifting greater than twenty-five pounds.
9. On 23 October 1992, Dr. Gwinn released plaintiff to return to work for defendant as a "packager". The packager position allowed plaintiff to alternate between separate duties every two hours. The "packager" position was within plaintiff's physical restrictions.
10. On 3 November 1992, plaintiff continued to complain of low back and bilateral leg pain. On that date she was also exhibiting symptoms that were disproportionate to her physical condition. Plaintiff was not a candidate for surgery due to the absence of objective findings justifying such a procedure. Surgery was not recommended due to plaintiff's somatoform pain disorder and dependent personality disorder.
11. On 3 November 1992, plaintiff reached maximum medical improvement, retaining a five percent permanent partial impairment of her back as a result of her injury on 6 April 1992. Dr. Gwinn recommended that plaintiff avoid excessive forward bending and twisting and that she not lift more than twenty pounds.
12. On 16 November 1992, plaintiff was examined by Dr. Rich upon referral by Dr. Gwinn. Dr. Rich imposed no restrictions on plaintiff's return to work.
13. On 15 January 1993, plaintiff presented to Dr. Svara, who released plaintiff, after two examinations, to return to work with restrictions against repetitive heavy lifting.
14. Plaintiff presented to Dr. Gwinn again on 2 June 1993 and was diagnosed with mild degenerative disc disease at L5-S1, with functional overlay. Dr. Gwinn recommended that plaintiff be evaluated by Dr. Schmickley and Dr. Gwinn released plaintiff to return to work for defendant sorting rejects. Dr. Gwinn recommended that plaintiff work two hours per day through 18 June 1993, four hours per day through 2 July 1993, six hours per day through 16 July 1993 and eight hours per day beginning 19 July 1993.
15. On 16 June 1993, plaintiff returned to Dr. Gwinn. Plaintiff stated that she had worked two hours per day the preceding week, but that she had been unable to work since that date due to back pain. When plaintiff returned to work, she was reassigned from the position approved on 2 June 1993 (sorting rejects) to a position filling variety packs. Dr. Gwinn excused plaintiff from work the two previous days, but allowed her to return to work on 16 June 1993. Plaintiff did not return to work on 16 June 1993.
16. Plaintiff returned to Dr. Gwinn on 24 June 1993. Plaintiff informed Dr. Gwinn that she had been unable work due to pain. Dr. Gwinn again released plaintiff to return to work sorting rejects. Plaintiff did not return to work.
17. On 29 June 1993, defendant informed plaintiff that she was to return to work in the reject area and that her work assignment would not change until approved by Dr. Gwinn. Thereafter, plaintiff did not return to work for defendant. On 21 July 1993, defendant terminated plaintiff's employment.
18. The reject sorting position that defendant made available to plaintiff could be performed while sitting or standing and did not involve excessive lifting, bending or twisting. Plaintiff was capable of working as a reject sorter.
************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 6 April 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $221.34 per week for fifteen weeks. N.C. Gen. Stat. § 97-31(23).
3. Plaintiff unjustifiably refused employment procured for her, suitable to her capacity, and, therefore, is entitled to no additional disability compensation. N.C. Gen. Stat. § 97-32.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on 6 April 1992, for so long as such evaluations, examinations or treatments tend to effect a cure, give relief or will tend to lessen her period of disability. N.C. Gen. Stat. § 97-25.
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $221.34 per week for fifteen weeks. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury on 6 April 1992 for so long as such evaluations, examinations or treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in paragraph 1 is approved for plaintiff's attorney and shall be paid as follows; twenty-five percent of the compensation due plaintiff shall be deducted from that amount and paid directly to plaintiff's attorney.
4. Defendant shall pay the costs.
This the _____ day of July 1997.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ____________ COY M. VANCE COMMISSIONER
S/ ____________ MARY MOORE HOAG DEPUTY COMMISSIONER
DCS:jmf